1

THE HONORABLE THOMAS S. ZILLY

2

3

4

5

6

UNITED STATES DISTRICT COURT

7

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

| | |
|---|---|
| EXPERIENCE HENDRIX, LLC, a Washington Limited Liability Company, and AUTHENTIC HENDRIX, LLC, a Washington Limited Liability Company,<br><br>                                    Plaintiffs,<br><br>                    vs.<br><br>HENDRIXLICENSING.COM, LTD, d/b/a HENDRIX ARTWORK and HENDRIXARTWORK.COM, a Nevada Corporation, and ANDREW PITSICALIS and CHRISTINE RUTH FLAHERTY, husband and wife,<br><br>                                    Defendants. | No. C09-0285 TSZ<br><br>PLAINTIFFS EXPERIENCE HENDRIX AND AUTHENTIC HENDRIX' SUPPLEMENTAL BRIEFING ON THE CONSTITUTIONALITY OF THE WASHINGTON PERSONALITY RIGHTS ACT PURSUANT TO THE COURT'S SEPTEMBER 1, 2010 ORDER |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

# I.    INTRODUCTION

Defendants' counterclaim requested a declaratory ruling that the Washington Personality Rights Act (hereinafter "WPRA" or "the Act"), as amended in 2008, does not apply to Jimi Hendrix.[1] In their supplemental briefing, Defendants conceded that the Act applies to Jimi Hendrix, but asked the Court to declare the Act unconstitutional.[2] In response, this Court issued a notice and order, in which it directed the parties to brief the constitutional issues raised by Defendants. This brief is submitted in compliance with that directive.

Before reaching the merits of the constitutional issues, however, the Court should examine whether Defendants have established their standing to seek a declaration of unconstitutionality. The question of Defendants' standing is directly related to the underlying issue of the meaning of the amended WPRA, which limits its application to "products entered into commerce in this state" or "advertisements disseminate[d] or publish[d] in this state."[3] Defendants' counterclaim makes no factual allegations regarding activities within Washington that would implicate this statute. Nor have Defendants presented any evidence of activities implicating the statute. When the facts before the court are considered, it is apparent that Defendants are not engaged in business activities in Washington that implicate the WPRA. Therefore, there is no actual case or controversy concerning Defendants' counterclaim. Instead, Defendants wish the Court to declare a statute unconstitutional based on hypothetical activities by a defunct corporation.

Even if the Defendants could establish standing, the WPRA easily passes constitutional muster because, with particular regard to posthumous publicity rights, it only applies to personality rights infringements occurring within this State and in cases where there are sufficient minimum contacts with Washington that satisfy constitutional requirements for

---

[1] Dkt. 52 at 14.
[2] Dkt. 90.
[3] RCW 63.60.050.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)   1

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

personal jurisdiction. Therefore, the Act does not violate Due Process or offend the Commerce Clause. Defendants' other challenges are also without merit.

## II.    BACKGROUND

Hendrixlicensing.com, Ltd. is a Nevada corporation formed on February 28, 2008.[4] Beginning in late 2008, Defendants affixed a Jimi Hendrix signature, a Jimi Hendrix headshot logo, and the business and domain names "Hendrixlicensing.com" and "Hendrixartwork.com" (hereinafter "infringing marks") to products that Defendants licensed and sold. Goods included t-shirts, posters, lights, dartboards, and key chains. Defendants placed these infringing marks on a wide variety of merchandise, some of which was sold in the state of Washington, in a manner designed to capitalize on the strength and goodwill associated with Plaintiffs' Marks.[5] Each of Defendants' goods that were sold contained the infringing logo, infringing signature, and/or the infringing business name.[6]

Plaintiffs served a cease and desist letter on Defendants in February 2009 and then, in March 2009, initiated this lawsuit against them for infringing on Plaintiffs' trademarks. *See Complaint*. Experience Hendrix's claims are based solely on Hendrixlicensing.com, Ltd.'s (and its affiliates') infringing uses of Plaintiffs' trademarks. Mr. Pitsicalis was named as a defendant because he personally directed Hendrixlicensing.com, Ltd.'s activities and was therefore a contributory infringer. At no time did Plaintiffs assert personality rights or threaten to bring personality rights claims against Defendants. Defendants brought counterclaims alleging that the amended Washington Personality Rights Act (WPRA) did not apply to Jimi Hendrix.[7] Defendants alleged no factual basis for their counterclaims other than to assert that Defendants had invested in purchasing original Jimi Hendrix images and artwork.

---

[4] Donohue Dec. Ex A.
[5] Dkt. 9, Willie Jinka Dec. ¶4.
[6] Dkt. 40, Ex K. Many of the items that Defendants licensed and sold contained all three infringing marks.
[7] On March 3, 2010, Defendants amended their answer to add additional counterclaims. These additional counterclaims did not alter the Defendants' original WPRA counterclaim.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  2

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

In April 2009, Experience Hendrix brought a motion for preliminary injunction seeking to enjoin future infringing activities by Defendants.[8] The Court granted that Motion on July 2, 2009. On July 30, 2009, this Court entered a preliminary injunction enjoining Defendants from further infringing uses of Defendants Jimi Hendrix signature; Defendants' Jimi Hendrix headshot logo; and the domain names Hendrixlicensing.com and Hendrixartwork.com.

Currently Hendrixlicensing.com, Ltd. is an inactive Nevada Corporation and is in default.[9] Mr. Pitsicalis has admitted that Hendrixlicensing.com stopped doing business in 2009 because of the Court's Preliminary Injunction.[10] Less than two weeks after entry of the injunction, Mr. Pitsicalis created Rockin Artwork, LLC.[11] On the same date, he transmitted a letter to Hendrixlicensing.com's licensees confirming that Hendrixlicensing.com had ceased operating and that Mr. Pitsicalis had formed a new, separate company—Rockinartwork.com:

> . . . any companies interested in transfer of license or a new license with Rockin Artwork LLC will be transferred or rewritten at no additional advances."[12]

Although Rockin Artwork, LLC is clearly an entity affiliated with Mr. Pitsicalis, and therefore subject to the Court's preliminary injunction, it is not a party to this lawsuit. Nor are its activities at issue in the lawsuit, except to the extent that Rockin Artwork, through Mr. Pitsicalis, has continued to sell goods bearing infringing and enjoined marks.[13]

---

[8] Each of Defendants' products submitted in briefing by both parties utilized a Jimi Hendrix signature, Jimi Hendrix headshot logo and/or the names "hendrixlicensing.com" or "hendrixartwork.com".

[9] Donohue Dec. Ex. A (Nevada Corporation detail showing default).

[10] *See* Dkt. 76 at p. 2 (Defendants' Response to Plaintiff MSJ stating that "[i]n fact Rockin Artwork LLC only exists due to Experience's demands and successful litigation to prohibit Pitsicalis from using the names Hendrix Licensing and Hendrix Artwork."). During his June 3, 2010 deposition, Mr. Pitsicalis testified that the defendant business entities were dissolved or dissolving, and had not been in business since before August 2009. Donohue Dec. Ex. B at 23:18–26:18 (Pitsicalis stopped using Hendrixlicensing.com in March 2009 and had begun using Rockin Artwork by August 2009). *See also* Dkt. 84 Ex T (August 10, 2009 memo from Rockin Artwork).

[11] Although Rockin Artwork is not a party here, it is clearly an entity under Pitsicalis' control and therefore subject to the injunction and to claims for damages related to activities covered by the injunction. Plaintiffs have not made a WPRA against Rockin Artwork.

[12] Dkt. 84 Ex T (August 10, 2009 memo from Rockin Artwork to Hendrixlicensing.com licensees).

[13] *See, e.g.*, July 12, 2010 Rockinartwork.com screen shot and July 12, 2010 Art.com screen shot reproduced in Plaintiffs' July 19, 2010 Response to Defendants' Motion for Summary Judgment at pp. 1–2.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  3

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

In efforts to learn what may be the factual basis for the WPRA counterclaims, Experience Hendrix propounded discovery to Defendants. In response, Defendants failed to identify any facts relating to their WPRA claim, stating: "The existing counterclaims [WPRA] are based on legal precedent and argument, readily available through standard sources to you as well as us."[14]

Thus, the evidence before the Court shows that Defendants sold or licensed products bearing infringing marks that have been enjoined, and that the named Defendant-entities ceased doing business more than a year ago. There are no facts before the Court to show any activity by Defendants in Washington that would trigger application of the WPRA.

### III.    ARGUMENT

#### A.    <u>Defendants lack Standing</u>

##### 1.    Article III Standing

Under Article III of the Constitution, a federal court cannot consider the merits of a claim unless the person invoking the court's jurisdiction establishes standing.[15] Absent standing, no "case or controversy" exists and an Article III court lacks subject matter jurisdiction.[16] The "irreducible constitutional minimum of standing" contains three requirements.[17] First and foremost, an "injury in fact" must be alleged (and ultimately proven)—a harm suffered by the party invoking the court's jurisdiction that is concrete and actual or imminent, not conjectural or hypothetical.[18] Second, there must be causation — a fairly traceable connection between the injury and the complained-of conduct of the defendant. *Id.* And third, there must be redressability—a likelihood that the requested relief will redress the

---

[14] Donohue Dec. Ex C.
[15] *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).
[16] *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).
[17] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).
[18] *Steel Co.* 523 U.S. at 103.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)   4

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

alleged injury. This "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement."[19]

Standing is not a mere pleading requirement—it must be established by evidence appropriate for every stage of litigation.[20] Furthermore, standing must be shown with respect to each form of relief sought, whether equitable or monetary.[21] When evaluating standing, "'[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"[22] And, when a party challenges the constitutionality of a statute, that party must show that the statute violates the party's own rights.[23]

Here, the only facts before the Court pertain to Defendants' efforts to market goods subject to Plaintiffs' trademark rights, a subject upon which the Court has already ruled. While Defendants posit that unidentified "original images and likenesses" of Jim Hendrix are not subject to Defendants' trademark rights (Dkt.52 at 14), there is no evidence (or even allegations) to show that Defendants have introduced merchandise bearing only such images or likenesses into Washington or that Plaintiffs have invoked (or even threatened to invoke) the WPRA against any of their activities. Furthermore, the defendant-entities, through which trademarked good have previously been distributed, are now out of business.

On this record, Defendants cannot establish an injury in fact "that is 'actual or imminent,' rather than 'conjectural' or 'hypothetical.'"[24] Allegations of future injury will satisfy the requirement only if the party invoking the court's jurisdiction "is immediately in danger of sustaining some direct injury as the result of the challenged official conduct."[25]

---

[19] *Id.*
[20] *Smith v. Univ. of Wash. Law Sch.*, 2 F.Supp.2d 1324, 1338 (W.D. Wash. 1998), *aff'd*, 233 F.3d 1188 (9th Cir. 1999) (*citing Lujan*, 504 U.S. at 561).
[21] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).
[22] *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (*quoting Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983)).
[23] *New York v. Ferber*, 458 U.S. 747, 767 (1982).
[24] *Lujan*, 504 U.S. at 560.
[25] *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983).

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  5

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

Specifically, Defendants must show "an actual and well-founded fear that the law will be enforced against them."[26] There is no basis for such a showing. Similarly, in order to meet causation and redressability requirements, "it must be 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'"[27]

Here, Plaintiffs have not made a WPRA claim against Defendants. Nor have Defendants demonstrated that any of their ongoing activities implicate the WPRA. Accordingly, Defendants have, at best, a "mere interest" in the potential application of WPRA, which is not sufficient to meet Article III requirements.[28] They have not shown how a declaration of unconstitutionality would provide them any redress from an actual or imminent injury.

### 2.      Prudential Standing

In addition to constitutional requirements, the doctrine of prudential standing requires the Court to consider, even where jurisdiction exists, whether it is appropriate to exercise it. Ripeness is among the several considerations that fall under the heading of prudential standing. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[29] "[T]hrough avoidance of premature adjudication," the ripeness doctrine prevents courts from becoming entangled in "abstract disagreements."[30] It is designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action."[31] In this regard, federal courts follow a "policy of strict necessity," whereby,

> constitutional issues affecting legislation will not be determined … in advance of the necessity of deciding them; in broader terms than are required by the precise facts to which the ruling is to be applied; if the record presents some other ground upon which the case may be disposed of; at the instance of one who fails to show that he is injured by the statute's operation, …; or if a

---

[26] *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393, (1988).
[27] *Lujan* at 560-61 (citations omitted).
[28] *United States* v. *Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 687 (1973).
[29] *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003) (internal quotation marks omitted).
[30] *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977).
[31] *Portman v. County of Santa Clara,* 995 F.2d 898, 902 (9th Cir. 1993).

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)   6

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

construction of the statute is fairly possible by which the question may be avoided.[32]

Additional considerations apply when the Court is asked to issue a declaratory ruling; *i.e.,* even if jurisdictional requirements are met, the Court has substantial discretion to refuse relief.[33] In exercising this discretion, district courts must consider:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.[34]

Further, in cases of public import, the issues "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."[35] Under that rubric, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."[36]

Because Defendants' counterclaim, including the additional request to declare the WPRA unconstitutional, rests on unknown or hypothetical facts, and because it is entirely unclear what relief the Court could afford to Defendants in these circumstances, these prudential considerations also require dismissal of the WPRA counterclaim.

B.   **The WPRA is Constitutional**

The parties agree that the WPRA creates a property right in each individual or personality's name, voice, signature, photograph or likeness.[37] And, as Defendants now concede, this right applies to "all individuals and personalities, living and deceased, regardless

---

[32] *Rescue Army v. Mun. Court of City of Los Angeles*, 331 U.S. 549, 569 (1947).
[33] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, (1995).
[34] *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2004).
[35] *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 243-44 (1952).
[36] *Buono v. Kempthorne*, 502 F.3d 1069, 1079 (9th Cir. 2007) (*quoting Exxon Corp. v. Heinze,* 32 F.3d 1399, 1404 (9th Cir. 1994)).
[37] Dkt. 90 at 2:7-14; Dkt. 89 at 4:4-8.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  7

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

of place of domicile or place of domicile at time of death," including Jimi Hendrix.[38] But Defendants say that this statutory directive to recognize posthumous personality rights is unconstitutional because New York, Jimi Hendrix's domicile at the time of death, does not recognize those rights. As shown below, this argument ignores the relevant Constitutional standards. When those standards are applied, it is apparent that the amended Act is constitutional because it applies only to personality rights infringements occurring in Washington and because it equally applies to residents and non-residents. Further, the record provides no basis to hold that the WPRA violates the First Amendment or the Copyright clause. For these reasons, the Court should decline Defendants' invitation to invalidate the WPRA.

### 1.    The WPRA only applies to infringements occurring in Washington and does not require other jurisdictions to apply Washington law.

Defendants' attack on the WPRA's constitutionality ignores its true scope and application. While the Act contains a directive to recognize posthumous rights, it applies only to infringements occurring within Washington.[39] Furthermore, an action to enforce the WPRA can be brought against a non-resident of Washington only if minimum contacts exist with this state sufficient to satisfy statutory and constitutional jurisdictional requirements.[40] The WPRA does not contain a directive to apply Washington law to infringements occurring outside the state. The Act does not purport to require courts sitting in other states to apply it to acts occurring in other states and it does not attempt to establish a nation-wide law of personality rights.

---

[38] Dkt. 90 at 2:15-18.
[39] *See* RCW 63.60.050-060 (Actions to enforce WPRA only authorized in Washington courts with respect to infringements of personality rights occurring within State of Washington).
[40] RCW 4.28.185; *Int'l Shoe v. Washington,* 326 U.S. 310 (1945).

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  8

Wilson Smith Cochran Dickerson
A PROFESSIONAL SERVICE CORPORATION
1700 Financial Center, 1215 4th Avenue
Seattle, Washington 98161-1007
Telephone: (206) 623-4100   Fax: (206) 623-9273

The rights recognized under the WPRA are independent of and coexist with the personality rights laws that exist in other states.[41] The Washington legislature has not attempted to redefine or alter the personality rights recognized by New York law or the law of any other state. A court sitting in New York will apply its own conflicts analysis to determine which state's law to apply in any given case. Accordingly, there is no basis for concern that the Act attempts to require application of Washington law to persons and transactions that are outside of the state's lawful jurisdiction.

2.      **The authority of states to protect personality rights is well-established**

As of 2002, thirty states recognized and protected rights of personality and publicity, eighteen of them by statute.[42] In *Zacchini v. Scripps-Howard Broadcasting Co.,*[43] the United States Supreme Court recognized the constitutional power of states to regulate infringements of personality rights within their borders. Zacchini performed in a human cannonball act. He sued for monetary damages from a television company that recorded and broadcast his entire performance as part of a local news broadcast. The Ohio Supreme Court recognized that Zacchini had a right of personality under state law, but held that the First and Fourteenth Amendments gave the television station the right to broadcast the performance. The United States Supreme Court reversed, stating:

> The Constitution no more prevents a State from requiring respondent to compensate petitioner for broadcasting his act on television than it would privilege respondent to film and broadcast a copyrighted dramatic work without liability to the copyright owner.[[44]]

---

[41] *See, e.g.,* Ind. Code § 32-36-1 et seq. The Indiana Personality Rights act only applies "to an act or event that occurs within Indiana, regardless of a personality's domicile, residence, or citizenship." Ind. Code § 32-36-1-1(a).
[42] McCarthy, *The Rights of Publicity and Privacy* § 6:3 (2d ed. rev. 2002).
[43] 433 U.S. 562 (1977).
[44] *Id.* at 575.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  9

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

Since *Zacchini*, federal courts have repeatedly recognized that states may validly regulate personality rights.[45]

### 3. Because the WPRA applies only to infringements within the state of Washington, it does not violate the Due Process or Full Faith and Credit clauses.

Defendants' Due Process and Full Faith and Credit clause arguments are resolved by a proper reading of the Act. The WPRA regulates only infringements of personality right that occur within Washington.[46] Therefore, the Act's reach is no broader than state common law prohibiting defamation or statutory law prohibiting unfair or deceptive business acts or practices within the state. It does not purport to create a national personality rights law or regulate infringements of any rights within the borders of any other state. Nor does it purport to require recognition of a post mortem right of publicity in New York.

Defendants have cited *Allstate Insurance Company v. Hague*,[47] and *Phillips Petroleum v. Shutts*,[48] as authority for their claim that the WPRA violates the Due Process and Full Faith and Credit clauses. In fact, both cases show that the WPRA does not violate due process or the Full Faith and Credit clause and support the constitutionality of the WPRA.

*Allstate* involved an insurance claim arising out of a fatal auto accident that occurred in Wisconsin. The operators of both vehicles and the decedent were Wisconsin residents. The policy was issued in Wisconsin. The decedent's widow moved to Minnesota after the accident and filed suit in Minnesota state court, which applied Minnesota law.[49] The United States

---

[45] *See e.g., Midler v. Ford Motor Co.,* 849 F.2d 460 (9th Cir. 1988) (applying California law to claim for voice misappropriation); *Wendt v. Host Intern., Inc.,* 125 F.3d (9th Cir. 1997); *Waits v. Frito-Lay, Inc.* 978 F.2d 1093, 1100 (9th Cir. 1992)(state law claims for violation of publicity rights not preempted); *Keller v. Elec. Arts, Inc.,* 2010 WL 530108 (N.D. Cal. 2010) (rejecting argument that state right of publicity claims were barred by First Amendment based on alleged transformative depiction of college football player in video game).
[46] *See* RCW 63.60.050 (("Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce *in this state . . .*").
[47] 449 U.S. 302 (1981).
[48] 472 U.S. 797 (1985).
[49] *Allstate*, 449 U.S. at 305-06.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)   10

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

Supreme Court affirmed. After holding that standards under the Due Process and Full Faith and Credit clauses with respect to choice of law issues are identical, the Court stated:

> [F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.[50]

The Court then held that the application of Minnesota law was constitutional based on the following contacts:

(1)   The decedent worked in Minnesota (although he was not commuting to or from work at the time of the accident);

(2)   The insurer did business in Minnesota; and

(3)   The decedent's widow became a Minnesota resident before she filed suit.

This holding was issued even though the accident occurred in another state, all parties were residents of another state at the time of the accident, and the insurance policy was issued in another state, thereby illustrating that the level of contact required by the Due Process and Full Faith and Credit Clauses is minimal.

*Shutts* is likewise of no help to Defendants. That case involved a nationwide class action seeking to recover interest on natural gas royalties. Although the case was filed in Kansas, 99% of the gas leases in question and 97% of the plaintiff-class had no connection with Kansas. The Kansas courts nevertheless applied Kansas law to all class members, assessed liability based on Kansas law, and set the interest rates under Kansas principles of equity.[51] The Court applied the test formulated in *Allstate v. Hague* and reasoned that a state's law could apply to a claim if the state had significant contacts with the alleged act or acts, stating:

> Allstate noted that a particular set of facts giving rise to litigation could justify, constitutionally, the application of more than one jurisdiction's laws. The plurality recognized, however, that the Due Process Clause and the Full Faith and Credit Clause provided modest restrictions on the application of forum law. These restrictions required "that for a State's substantive law to be

---

[50] *Id.* at 312-13.
[51] *Shutts,* 472 U.S. at 814-15.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  11

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION

1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." [52]

The Court then held that it was unconstitutional to apply Kansas law to claims that had *no connection* to Kansas and remanded the case for a determination as to which claims had a sufficient connection to that state.[53]

Here, the Plaintiffs are Washington entities and their principal place of business is here. Any action they could bring under the WPRA would be for infringements of personality rights occurring in Washington. These contacts are much more substantial than the contacts that permitted application of Minnesota law in the *Allstate* case. And, unlike *Shutts*, Washington has a legitimate interest in protecting personality rights against infringements that occur in Washington. The combination of infringement in Washington and an action by Washington residents is more than sufficient to satisfy the Due Process and Full Faith and Credit clauses.

### 4. The WPRA does not violate the Commerce Clause.

The Commerce Clause grants Congress the authority "[t]o regulate commerce ... among the several states[.]"[54] This grant of authority to Congress also encompasses an implicit or "dormant" limitation on the authority of states to enact legislation affecting interstate commerce.[55] A two-tiered approach is generally used to determine whether state legislation has violated the dormant Commerce Clause.[56] Under the first tier, a state statute is invalid if it discriminates against interstate commerce in favor of in-state economic interests, or if its practical effect is to directly control commerce wholly outside the regulating state.[57] Here, because it only applies to infringements in this state, the WPRA does not apply to transactions

---

[52] *Id.* at 818 (*quoting Allstate,* 449 U.S. at 312-13).
[53] *Id.* at 821-22.
[54] U.S. Const., art. I, § 8, cl. 3.
[55] *Healy v. The Beer Inst., Inc.* 491 U.S. 324, 326, n. 1 (1989).
[56] *Brown-Forman Distillers v. N.Y. Liquor Auth.*, 476 U.S. 573, 578-579 (1986).
[57] *Id.* at 579.

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)   12

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION

1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

unrelated to the legitimate interests of Washington. The Act also establishes the same rights for Washington residents and non-residents, and it treats out-of-state infringers no differently than in-state infringers. Therefore, the Act does not discriminate against inter-state commerce.

Under the second tier, which is used to evaluate state legislation that does not discriminate against interstate commerce or directly control it, a balancing test is employed:

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.[58]

*Zacchini* recognizes that protecting publicity rights is a legitimate state interest.[59] Furthermore, as the legislative record shows, the amended WPRA is intended to protect individuals' personality rights, and the assignees of those rights,[60] while simultaneously avoiding interference with interstate commerce by limiting its reach to infringements occurring in Washington. Because there is no evidence before the Court showing discrimination against interstate commerce or even an adverse impact on interstate commerce, defendants cannot sustain a facial challenge to the WPRA under the Commerce Clause.[61]

### 5. Because personality rights are broader than copyright, the WPRA is pre-empted by the Copyright Act in only limited circumstances.

Although personality rights claims can overlap with copyright claims, the Copyright Act does not entirely preempt state protections of personality rights.[62] Rather, preemption arguments turn on the specific facts involved and must be examined on a case by case basis. For

---

[58] *Pike v. Bruch Church, Inc.,* 397 U.S. 137, 142 (1970).
[59] *Zacchini v. Scripps-Howard Broad. Co.,* 443 U.S. 562 (1977).
[60] Two of the largest licensors of digital images, Corbis and Getty Images, are located in Washington. Corbis was a primary supporter of the amendments to the Act. *See* Donohue Dec Ex D (Audio statements by Jim Mitchell of Corbis and State representative Jamie Pedersen during House hearing).
[61] *See Black Starr Farms, LLC v. Oliver,* 600 F.3d 1225, 1232 (9th Cir. 2010) (Commerce Clause violation cannot be based on "conjecture").
[62] *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 910-911 (7th Cir. 2004)

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

example, in *Midler v. Ford Motor Company*,[63] Ford hired a singer to imitate Bette Midler's voice for a commercial. Midler filed suit, including claims for infringement of personality rights. The Ninth Circuit held that her claims were not preempted by the Copyright Act because the sound of Midler's voice is not "fixed" in a tangible medium of expression.[64]

The Ninth Circuit employs the following test for determining whether a personality rights claim is preempted by the Copyright Act:

> (1) Does the subject matter of the personality rights claim come within the subject matter of copyright?
>
> (2) Are the rights asserted in the personality rights claim equivalent to those created under the Copyright Act?[[65]]

The "subject matter" of the Copyright Act is original works of art fixed in a tangible medium from which they can be reproduced.[66]

The Ninth Circuit has applied preemption in specific, narrow circumstances. In *Laws v. Sony Music Entertainment, Inc*,[67] Deborah Laws had entered into an agreement with Elektra/Asylum Records to make master recordings of her vocal performances. Elektra received the exclusive copyright to the recordings, but also agreed to condition certain types of distribution on further permission from Laws. Without Laws' permission, Elektra licensed the recording of one song to Sony, which incorporated samples of the Laws recording into a hit song by Jennifer Lopez.

Laws sued for violation of her personality rights. The Ninth Circuit held that her claims were preempted by the Copyright Act. It contrasted Laws' claims with Midler's, observing that the harm alleged by Laws was the reproduction and distribution of the Lopez CDs. Thus, the

---

[63] 849 F.2d 460 (9th Cir. 1980)
[64] 406 F.2d at 463; *see also Waits v. Frito-Lay, Inc.* 978 F.2d 1093 (9th Cir. 1992) (claim of infringement of voice not preempted).
[65] *Laws v. Sony Music Entm't, Inc.* 448 F.3d 1134, 1137-1138 (9th Cir. 2006).
[66] *Id.* at 1139.
[67] 448 F.3d 1134, 1137-1138 (9th Cir. 2006)

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)   14

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

subject matter of the claims was Laws' artistic expression fixed in the CDs and the claims were "equivalent to" copyright infringement claims.[68]

The personality rights protected in the WPRA are much broader than the subject matter of the Copyright Act. The Act protects the right to use "name, voice, signature, photograph and likeness."[69] The protection is not limited to works of art that can be fixed in a tangible medium. Defendants cannot invoke preemption under the Copyright Act to preclude plaintiffs from asserting rights under the WPRA under all circumstances because preemption turns on the specific facts of each case.

### 6.   The record presents no basis to hold that the WPRA violates the First Amendment

Defendants' briefing contains one cryptic statement regarding their claim that the WPRA violates the First Amendment: "Persons in other jurisdictions where the individual's publicity rights were in the public domain there could no longer reproduce images and likenesses for commercial gain since they would be subject to Washington's regulation of the right created under the WPRA."[70] On its face, this statement amounts to no more than a complaint that varied state regulations of publicity and personal rights may limit the ability to disseminate the image and likeness of individuals without paying a license fee. But, in *Zacchini v. Scripps-Howard Broadcasting Co, supra,* the Court rejected the notion that such restrictions violate the First Amendment.

Courts that have examined the intersection of personality rights laws and commercial speech have engaged in a balancing of interests. For example, in *Comedy III Productions, Inc. v. Gary Saderup, Inc.,* the California Supreme Court held:

---

[68] *Id.; Jules Jordan Video, Inc. v. 144942 Canada, Inc.,* __ F.3d __, 2010 WL 3211818 (9th Cir. 2010) (personality rights claim based solely on reproduction and distribution of pirated DVDs preempted by Copyright Act)
[69] RCW 63.60.050.
[70] Dkt 90 at 8:1-4

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

> When artistic expression takes the form of a literal depiction or imitation of a celebrity for commercial gain, directly trespassing on the right of publicity without adding significant expression beyond that trespass, the state law interest in protecting the fruits of artistic labor outweighs the expressive interests of the imitative artist.[71]

The court adopted a balancing test: a depiction of a celebrity is protected by the First Amendment if it has "become so transformed that it has become primarily the defendant's expression rather than the celebrity's likeness."[72] This test can only be applied to specific claims of infringement, not an assertion that hypothetical "original images and likenesses." Indeed, from Defendants own description, it would appear that there is no transformative component that would trigger First Amendment protections.

If it did appear that Defendants were engaged in conduct triggering the WPRA, the Act incorporates provisions that are specifically tailored to protect free speech rights. For example, the WPRA does not apply to:

> use of a name, voice, signature, photograph, or likeness in connection with matters of cultural, historical, political, religious, educational, newsworthy, or public interest, including, without limitation, comment, criticism, satire, and parody relating thereto….[73]

Further, RCW 63.60.070(2) contains a number of specific types of expression that are exempt from the WPRA, including literary works, news stories, sports broadcasts and political campaigns.

When presented with a constitutional challenge, the court should construe the statute in a manner consistent with the Constitution.[74] Unless this Court is presented with a specific claimed infringement under the WPRA, it cannot attempt to construe the statute in a manner consistent with the Constitution. Defendants have not presented any evidence supporting their

---

[71] 21 P.3d 797, 808 (Cal. 2001)
[72] *Id*. at 809.
[73] RCW 63.60.070(1).
[74] *U.S. v. Clark*, 445 U.S. 23, 27-28 (1980)

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  16

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

Constitutional challenges to the WPRA. Accordingly, the Court can do no more than speculate as to how the WPRA might possibly interfere with the Constitutional right to free speech.

### 7. Because the WPRA treats Washington residents and non-residents exactly the same, it does not violate the Privileges and Immunities Clause.

Article IV, § 2, of the Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." *Hillside Dairy, Inc. v. Lyons*,[75] cited by defendants, holds that a statute violates the Privileges and Immunities Clause if the statute discriminates on the basis of residence or citizenship on its face or in practical effect. As discussed, the WPRA does not treat citizens of other states differently than Washington citizens. Anyone whose personality rights are violated by an infringement in Washington may sue under the statute. Anyone who infringes personality rights in the state of Washington may be sued under the statute.

### 8. Because defendants have no specific private property interest in ideas in the public domain, the WPRA does not violate the Takings Clause.

Property interests that are subject to due process protections are not created by the federal Constitution. "Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...."[76] The Takings Clause of the Fifth Amendment states that it applies to "private property." Defendants claim that Jimi's Hendrix's name, voice, signature, photograph and likeness are no one's private property, but are instead in the public domain. Thus, they have no basis to claim that the Washington legislature has taken their private property.[77]

### IV. CONCLUSION

The Court should dismiss Defendants counterclaim for a declaratory ruling concerning the WPRA for lack of standing. If the Court is inclined to address the statute's constitutionality,

---

[75] 539 U.S. 59 (2003).
[76] *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).
[77] *Commonwealth Edison Co. v. U.S.,* 46 Fed. Cl. 29 (2000) (Takings Clause applies only to "specific interest in physical or intellectual property").

PLAINTIFFS SUPPLEMENTAL BRIEF ON
THE CONSTITUTIONALITY OF THE WPRA
(Cause No. C09-0285 TSZ)  17

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

it should rule that it does not violate due process, equal protection, or any of the other five constitutional provisions that Defendants have thrown up in seeking to invalidate the Act.

Dated 1st day of October, 2010.

s/ *John D. Wilson, Jr.*
John D. Wilson, Jr., WSBA No. 4828
Alfred E. Donohue, WSBA No. 32774
WILSON SMITH COCHRAN DICKERSON
1215 4th Ave., Suite 1700
Seattle, WA 98161
(206) 623-4100 phone
(206) 623-9273 fax
wilson@wscd.com

-and-

Karen Wetherell Davis, WSBA No. 21195
William A. Drew, WSBA No. 38697
ELLIOT, OSTRANDER, & PRESTON, PC
707 SW Washington St., Suite 1500
Portland, OR 97205
(206) 325-1244 / (503) 224-7112
(503) 224-7819 facsimile
karen@eoplaw.com

-and-

Michael Madden, WSBA #8747
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101
(206) 622-5511
mmadden@bbllaw.com

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties below.


Thomas T. Osinski
OSINSKI LAW
535 Dock St., Suite 108
Tacoma,  WA  98402
tto@osinskilaw.com


David Martin
Timothy Shea
LEE SMART, COOK, MARTIN & PATTERSON P.S.
701 Pike Street, Suite 1800
Seattle, WA 98101-3927
dlm@leesmart.com
tds@leesmart.com


s/ John D. Wilson, Jr.
John D. Wilson, Jr. WSBA No. 32774
WILSON SMITH COCHRAN DICKERSON
1215 – 4th Ave., Suite 1700
Seattle, WA 98161
(206) 623-4100 telephone
(206) 623-9273 fax
donohue@wscd.com

Attorney for Plaintiffs

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273