THE HONORABLE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| **EXPERIENCE HENDRIX, LLC**, a Washington Limited Liability Company, and **AUTHENTIC HENDRIX, LLC**, a Washington Limited Liability Company,<br><br>Plaintiffs,<br>v.<br>**HENDRIXLICENSING.COM, LTD** dba **HENDRIX ARTWORK** and **HENDRIXARTWORK.COM**, a Nevada Corporation, and **ANDREW PITSICALIS** and **CHRISTINE RUTH FLAHERTY**, husband and wife,<br><br>Defendants. | No. C-09-0285 TSZ<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES**<br><br>**NOTED FOR CONSIDERATION:<br>November 5, 2010** |

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 1 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

In a Minute Order of September 1, 2010, the Court directed counsel to submit supplemental briefing analyzing if the Washington Publicity Rights Act, RCW 63.60 et seq (hereafter "WPRA") contained a "statutory directive" to apply it to Jimi Hendrix's right of publicity, would it therefore violate the Constitution.  Defendants Andrew Pitsicalis et al (hereafter "Pitsicalis") hereby respond to Plaintiffs' (hereafter "Experience") Supplemental Briefing on the Constitutionality of the WPRA.  Experience's arguments are not well taken and thus the Court should find the WPRA inapplicable to the Publicity Rights of Jimi Hendrix, as discussed more fully below and in Pitsicalis' other briefing filed on this matter.

## RESPONSE ARGUMENTS

### Pitsicalis Has Both Article III and Prudential Standing

Experience contends that Pitsicalis lacks standing to challenge the Constitutionality of the WPRA.  Not only do they contend that no "case or controversy" exists as required by Article III of the U.S. Constitution, but that even if the Court were to conclude there was, such a case is not ripe for consideration. Not only are both of these arguments flatly wrong, they have in fact been raised before by Experience in challenging Pitsicalis' Declaratory Judgment counterclaim for the applicability of the WPRA to the Publicity Rights of Jimi Hendrix.  In response to that motion the Court ruled that Pitsicalis has standing to go forward.  See Minute Order of July 30, 2009, Docket No 30.  Pitsicalis contends that the fact of its standing to bring the challenge to the WPRA is law of the case and, a settled matter the Court need not consider.[1]

Moreover, to the extent the Court were to consider Experiences' arguments as not bound by its prior ruling, they also fail.  It is well established that Pitsicalis deals in images and likenesses of Jimi Hendrix, and the WPRA could affect that business as it could grant rights to exclude and regulate those uses to Experience.  Mr. Pitsicalis himself is a party to this lawsuit

---

[1] "Given the nature of defendants' business and the historically adverse position of the parties, the Court cannot conclude that defendants' counterclaims are not 'plausibly' justiciable." See id at 2.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 2 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

and subject to its rulings, as Experience readily admits. See <u>Plaintiffs' Supplemental Briefing on Constitutional Issues of the WPRA</u> at 3.  Experience has also admitted that Pitsicalis' goods have been sold in Washington State when establishing jurisdiction for this lawsuit.  See <u>First Amended Complaint</u>, para. 18-19.  Experience also fails to acknowledge or discuss that any advertising containing the name, image, likeness, voice, or signature is also an infringement under the WPRA if it is broadcast or otherwise found in Washington.  See <u>RCW 63.60.050</u>.  Thus, any national or Internet based campaign to promote goods outside of Washington are also subject to the strictures of the WPRA.

Therefore Pitsicalis has standing under both Article III and the Prudential doctrines to move forward with his Declaratory Action due to Pitsicalis' ongoing trade in the image and likeness of Jimi Hendrix.

## The WPRA is Unconstitutional

As discussed more fully in Pitsicalis' own <u>Supplemental Briefing for Constitutional Issues</u>, the WPRA cannot be applied to the publicity rights of Jimi Hendrix within the "constitutional bounds" requirement of conflict of laws analysis due to the lack of contacts to satisfy Due Process requirements of the Fourteenth Amendment, and the Full Faith and Credit clause.  Moreover, under a direct application of constitutional scrutiny, the WPRA fails not only under Due Process and Full Faith and Credit, but the Commerce, Copyright, Takings, and Privileges and Immunities clauses, as well the First Amendment's Guarantees of Free Speech.

Rather than reiterate those arguments in toto here, Pitsicalis directs the Court to its <u>Supplemental Briefing on Constitutional Issues</u> discussing the grounds for each challenge at length.  Instead, Pitsicalis will only summarize those arguments as needed to respond directly to the constitutional arguments put forth by Experience, showing why each is not well taken.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 3 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

**The WPRA Reaches Beyond Washington State Both Expressly and in Practice**

Experience contends that the WPRA only applies with Washington. That is simply not the case. The WPRA creates a property right in each individual's name, voice, signature, photograph, and likeness. See RCW 63.60.010. This right expressly survives death and applies "regardless of the domicile, residence, or citizenship of the individual or personality at the time of death or otherwise recognizes a similar or identical property right." See id. The WPRA also deems this right to have existed prior to June 11, 1998, and to "apply to all individuals and personalities, living and deceased, regardless of place of domicile or place of domicile at time of death." See id. Similar language is placed throughout the WPRA. See RCW 63.60.010-080.

By its express language, the WPRA reaches out of Washington, literally through space and time, to events that occurred in other jurisdictions decades prior to its enactment. The Court need only take Experiences' arguments at face value to see this. Experience contends that a person domiciled in New York in 1970, who had no publicity rights when he died, suddenly has publicity rights and that they can be passed to an heir to be enforced in Washington—a state with no connection to, let alone jurisdiction over, Jimi Hendrix at the time of his death.

Experience also fails to acknowledge or discuss the prohibition under the WPRA on use of a "Personality's" voice, photograph, likeness, or signature on goods, but also advertisements for such goods as well. See RCW 63.60.050. Any national or online campaign that was broadcast or otherwise injected into Washington would bring liability on someone operating outside its territorial confines. This allows the controls on Publicity Rights set by Washington to set the standard for the entire nation, if not the world.[2]

---

[2] Pitsicalis does not wish to be hyperbolic, but the disregard for Domicile creates rights in Washington State over any personality living or deceased anywhere in the world in the last 50 years. With an integrated global economy it

DEFENDANTS' RESPONSE TO PLAINTIFFS'  
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES  
- 4 of 13

**Osinski Law Offices, P.L.L.C.**  
535 Dock St. Suite 108, Tacoma, Washington 98402  
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

Experience itself relies in part on a "stream of commerce" theory to establish jurisdiction for its Trademark claims in the current suit.  See Second Amended Complaint, para. 19.  However, it now appears to contend that such a broad theory of jurisdiction would never be leveled against Pitsicalis or other out-of-state actors dealing in Personality Rights controlled by the WPRA.  This simply strains credulity.

**State Assertion of Personality Rights as Broad as the WPRA are Not Established**

Experience relies heavily throughout its briefing on Zacchini v. Scripps-Howard, 433 U.S. 562 (1977).  Zacchini is easily distinguished from the broad grant of rights under the WPRA.  It dealt with an infringement that occurred wholly within State boundaries, the recording of a performance that occurred within State boundaries, that was subsequently broadcast within the state by a local news station. See id at 563-64.  The "appropriation" at issue consisted of Zacchini's "entire act" as a human cannonball, as opposed to a mere photograph, likeness, voice, or signature as covered by the WPRA.  See id.  And this concerned a current personality, as opposed to a retroactive posthumous grant as in the issue at bar.  See id.

These distinctions are all very crucial, as the Supreme Court heavily concentrated on similarity to Patent and Copyright, and incentives to create.[3]  This is very different from a broad, posthumous, and retroactive grant as bestowed by the WPRA.  Nothing about the WPRA

---

is easy to surmise how products can find their way into the stream of commerce and get to Washington from almost anywhere and be subject to liability.

[3] "The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in "science and useful Arts." Sacrificial days devoted to such creative activities deserve rewards commensurate with the services rendered.  These laws perhaps regard the "reward to the owner [as] a secondary consideration," United States v. Paramount Pictures, 334 U.S. 131, 158 (1948), but they were "intended definitely to grant valuable, enforceable rights" in order to afford greater encouragement to the production of works of benefit to the public. Washingtonian Publishing Co. v. Pearson, 306 U.S. 30, 36 (1939). The Constitution does not prevent Ohio from making a similar choice here in deciding to protect the entertainer's incentive in order to encourage the production of this type of work. Cf. Goldstein v. California, 412 U.S. 546 (1973); Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974)." See id at 576-77

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES - 5 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

clauses at issue encourage creation, in fact it does just the opposite, stifling it, pulling back Jimi Hendrix's and others right of Publicity from the Public Domain.  It eliminates the ability of photographers to sell their legally obtained pictures and movies, artists to sell their paintings, sculptures and other likenesses, and for either to create derivative works thereof.

At its core the Supreme Court in Zacchini recognized that Zacchini was concerned that having seen his act on TV the public would not come and pay admission to see him perform. See id at 575 ("if the public can see the act free on television, it will be less willing to pay to see it at the fair").  It found that to be valid grounds to protect his Publicity Right in his performance. "Thus, in this case, Ohio has recognized what may be the strongest case for a "right of publicity" -- involving, not the appropriation of an entertainer's reputation to enhance the attractiveness of a commercial product, *but the appropriation of the very activity by which the entertainer acquired his reputation in the first place.*" See id at 576 (emphasis added).  In the case of the WPRA as applied to Jimi Hendrix it is not the appropriation of the activity that made him famous, but his mere image and likeness.

**The WPRA Violates the Due Process and Full Faith and Credit Clauses by Reaching Beyond Washington State**

As discussed at length above, the WPRA reaches beyond Washington State, applying on its face to Personalities currently or any time in the last 50 years, regardless of domicile or place of domicile.  As a result, Washington State violates the Due Process clause of the Fourteenth Amendment and the Full Faith and Credit clause.  See Allstate Insurance v. Haugue, 449 U.S. 302 (1981); Phillips Petroleum v. Schutts, 472 U.S. 797 (1985).[4]  Experience argues that since they are "Washington entities and their principal place of business is here" that they

---

[4] See Defendants' Supplemental Briefing for Constitutional Issues for a more comprehensive treatment of this issue.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 6 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

would have even more substantial contacts than those deemed sufficient in the <u>Allstate</u> case. However, Experience misses the entire point.

In <u>Allstate</u>, the Supreme Court stated that "if a State has only an insignificant contact with the parties *and the occurrence or transaction* (emphasis added), application of its law is unconstitutional. See <u>Allstate</u> at 311. In fact, the Court pointed out that nominal residence, or post occurrence change of residence, to create standing were insufficient alone to justify application of the forum's law. See <u>id</u>. Residence alone is not enough to satisfy the Due Process and Full Faith and Credit clauses. Experience would also have to show a connection between Washington State and the "occurrence or transaction," which in this case is Jimi Hendrix's death.[5] It was his dying intestate in New York by which any rights passed to Experience. See <u>Experience Hendrix et al v. The James Marshall Hendrix Foundation et all</u>, C03-3462Z, aff'd 240 Fed. Appx. 739 (9th Cir. 2007).

Experience has brought forth no argument or evidence showing a connection between the death of Jimi Hendrix in New York in 1970 and Washington State. There is no such connection and thus application of the WPRA to the Publicity Rights of Jimi Hendrix would offend the Due Process and Full Faith and Credit clauses.

### The WPRA Violates the Commerce Clause

The WPRA, with its lack of limitation for domicile or citizenship, creates a national Washington State-centered system of Publicity Rights, supplanting Congress' authority over such matters and discriminating against citizens dealing in Publicity Rights in other states.[6] If a manufacturer or licensor of goods containing publicity rights fully legal in any other state or

---

[5] The devising of the right created by the WPRA would pass to his "beneficiaries or heirs under the laws of intestate succession applicable to interests in intangible personal property generally of the individual's or personality's domicile." See <u>RCW 63.60.030 (1)(a)</u>. Thus even the WPRA itself acknowledges that the death of the "personality" and passing of his property under the laws of the domicile (here, New York) is the central transaction/occurrence.

[6] Again, Pitsicalis directs the Court to <u>Defendants' Supplemental Briefing for Constitutional Issues</u> for a more in-depth analysis.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 7 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

territory were to allow them, intentionally or not, into Washington for sale, they would be subject to statutory damages and disgorgement of profits. See RCW 63.60.060. In fact, the WPRA can even be construed to affect non-Washington State citizens who have enough contacts for personal jurisdiction to apply even if their goods do not reach Washington State, only marketing materials or campaigns. See RCW 63.60.050 (advertising containing personality is infringing); and RCW 63.60.070 (exceptions make no accommodation for non-Washington residence or dealings.)

The WPRA thus has a real and prejudicial effect on interstate commerce, which is Congress' exclusive domain.

### The WPRA Violates the Copyright Clause

The WPRA interferes in the ownership and right to exploit rightfully owned copyrights in works incorporating the Publicity Rights of others, especially those previously in the public domain or based on proper derivative works. As applied to Pitsicalis, the WPRA would violate rights in copyrighted works that he has commissioned, licensed, or purchased that contain images or likenesses or Jimi Hendrix. He wouldn't be able to produce goods bearing them, or use Jimi Hendrix's name in describing them, beyond no more than five copies of a work of fine art, photography, or sculpture. All would violate the WPRA. See RCW 63.60.050—.070. Therefore, the WPRA unconstitutionally interferes with the Copyright clause by eviscerating rights granted thereunder.

Moreover, Experience's reliance on Laws v. Son Music Entertainment, Inc., 448 F.3d 1134 (9th Cir 2006), is misplaced. Pitsicalis agrees that Laws stands for the proposition that Publicity Rights claims can be pre-empted by U.S. Copyright Law. See id. In fact the 9th Circuit recently went even further, finding that if an actor's voice, name, image, likeness, or identity were allegedly infringed by the distribution of that actor's performance in a motion picture, then

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 8 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

Federal Copyright law pre-empted any state publicity law claim.[7]  Pitsicalis even contends that this preemption should reach any fixed tangible medium, not just motion pictures or sound recordings.  But, this does not change the fact the any personality rights granted by the WPRA that are not pre-empted by Federal Copyright claims could still massively interfere with holders of copyrights in images and likenesses of Jimi Hendrix.

**The WPRA Does Violate the First Amendment**

The WPRA does not strike a proper balance between Publicity Rights and the First Amendment's guarantees of Free Speech.  The WPRA's exemptions severely limit number of copies of original works of art, including photographs and sculptures, to no more than five.  Moreover, they do not allow for derivative or expanded uses of those works of art such as posters, or t-shirts, and any other good bearing an, or created in, the image or likeness of a "personality."  See RCW 63.60.070.[8]

As discussed above, Experience's reliance on the Zacchini case does not change this analysis.  Zacchini dealt with a broadcast/news exemption to a right of publicity.  See id at 433 U.S. 574-75.  Here, the WPRA grants a broad posthumous right of publicity, far beyond the appropriation at issue in Zacchini or the narrow free press defense proffered against it.

A more accurate measure is the free expression standards put forth in more recent Trademark and Copyright cases.  See e.g. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003) (discussing rights in "Barbie" dolls used in an original set of photographs and First Amendment defenses to Trademark and Copyright claims brought as a result); E.S.S.

---

[7] "In this case we are asked to decide a very narrow issue: whether an actor may bring an action for misappropriation of his or her name, image, likeness or identity under Section 3344 of the Civil Code [California's Publicity Rights Act] when the only alleged exploitation occurred through the distribution of the actor's performance in a motion picture. The trial court concluded that to the extent California law would permit such a claim, it was preempted by Federal Copyright law. We agree with the trial court and affirm."  Jules Jordan Video, Inc. v. 144942 Canada Inc., 08-55075, 08-55126 (9th Cir 2010)

[8] Again, Pitsicalis directs the court to Defendants' Supplemental Briefing for Constitutional Issues for a more in-depth analysis.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES - 9 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

Entertainment 2000 v. Rock Star Videos, 547 F.3d 1095, 1099 (9th Cir. 2008) (discussing Trademark claims and First Amendment defense thereto in video game.)

It is also important to note that both the pictures at issue in Walking Mountain, and the Videogame in ESS were commercial, for profit, endeavors. But they were afforded no less First Amendment protection for their expression. Thus, Experience's reliance on the WPRA's exemptions for literary, cultural, historical, satirical, newsworthy, and other such works under RCW 63.60.070 is not sufficient to avoid conflict with the First Amendment.

### The WPRA Violates the Privileges and Immunities Clause

With the WPRA, Washington has created a cause of action against non-Washington citizens with perfectly valid rights in a Personality. Not only can they not exercise those rights in Washington, but if they have minimum contacts enough to satisfy personal jurisdiction, they could have a WPRA action commenced against them for actions outside of the State of Washington. There is no limitation in the "exceptions" portion of the statute for out of state citizens or actions beyond Washington's Territorial Borders. See RCW 63.60.070. In fact, the right is defined as explicitly applying to "This chapter is intended to apply to all individuals and personalities, living and deceased, regardless of place of domicile or place of domicile at time of death." See RCW 63.60.010.

This gives Washington citizens the "privilege" of a publicity right enforceable against non-Washington citizens that does not exist in the defendant's home jurisdiction, thus violating their privileges and immunities.

### The WPRA Violates the Takings Clause

Experience contends that Pitsicalis has no claims on Jimi Hendrix's publicity rights since they are in the public domain, and thus no private property has been "taken" within the meaning of the clause. But, the Publicity Rights are not the "property" at issue. It's the rights in the images and likenesses of Jimi Hendrix in various photographs, paintings and such that Pitsicalis

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 10 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

has obtained, rights eviscerated if use of their subject matter, Jimi Hendrix, is found to violate the WPRA.

Through the WPRA, Washington has deprived all economic use of the images and likenesses of "individuals and personalities" previously in the public domain and readily useable under the laws of other jurisdictions without just compensation.  It has also placed those rights back in private hands.  In the case at bar, Pitsicalis has several images and likenesses of Jimi Hendrix under his exclusive control for use on apparel, posters, and fine art.  Under the <u>Foundation</u> ruling, it is clear that those images are free to use, and Pitsicalis has acted as such.

However, if the WPRA were found to apply to Jimi Hendrix Publicity Rights, Pitsicalis could no longer offer for sale goods bearing the image, likeness, or name of Jimi Hendrix in Washington, directly or indirectly, for fear of legal action by Experience.  Thus, Pitsicalis' "property" in the form of rights in images and likenesses of Jimi Hendrix will have been "taken" without compensation by Washington's regulation of publicity rights, namely the WPRA.  As such, the WPRA cannot be constitutionally applied to Pitsicalis under the Fifth Amendment to the Constitution's Taking clause, as made applicable to the states via the Fourteenth Amendment.

## **CONCLUSION**

Application of the WPRA to the Publicity Rights of Jimi Hendrix violates several aspects of the Constitution.  For the reasons stated above nothing in Experience's <u>Supplemental Briefing on the Constitutionality of the WPRA</u> changes that analysis or outcome.  Pitsicalis therefore urges the Court to rely on his briefing on the unconstitutionality of the WPRA and find that the law does not apply to the Publicity Rights of Jimi Hendrix.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 11 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

SUBMITTED this 15th day of October, 2010.

        OSINSKI LAW OFFICES, P.L.L.C.

By   /s/ Thomas T. Osinski Jr

Thomas T. Osinski Jr., Esq.
Attorney for Defendants
WSBA #34154

Osinski Law Offices PLLC
535 Dock Street, Suite 108
Tacoma WA  98402
Tel:       253.383.4433
Fax:      253.572.2223
Email:   tto@osinskilaw.com

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES
- 12 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com

# CERTIFICATE OF SERVICE

I certify that I served a copy of these documents on all parties or their counsel of record on the date below as follows:

☐ US Mail Postage Prepaid

☐ ABC/Legal Messenger

☒ Email or other Electronic means by prior stipulation

☐ Hand delivered by: _____

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 15th day of October, 2010, at Tacoma, WA.

OSINSKI LAW OFFICES P.L.L.C.

/s/ Thomas T Osinski Jr.
_____
Thomas T. Osinski, Jr., Esq.
WSBA #34154

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING FOR CONSTITUTIONAL ISSUES - 13 of 13

**Osinski Law Offices, P.L.L.C.**
535 Dock St. Suite 108, Tacoma, Washington 98402
Tel (253) 383-4433 | Fax (253) 572-2223 | tto@osinskilaw.com