THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| EXPERIENCE HENDRIX, L.L.C., a Washington Limited Liability Company, and AUTHENTIC HENDRIX, LLC, a Washington Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>HENDRIXLICENSING.COM, LTD, d/b/a HENDRIX ARTWORK and HENDRIXARTWORK.COM, a Nevada Corporation, and ANDREW PITSICALIS,<br><br>Defendants. | No. C09-0285 TSZ<br><br>PLAINTIFFS EXPERIENCE HENDRIX, L.L.C. AND AUTHENTIC HENDRIX, LLC'S RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE*<br><br>NOTE ON MOTION CALENDAR:<br>April 15, 2011 |

**INTRODUCTION**

Defendants' five motions in limine are based on a factually and legally flawed premise which, like a "house of cards", will collapse when those flaws are exposed to the clear light of day. Defendants have requested orders in limine that: (1) Plaintiffs shall be judicially estopped from introducing evidence of the "profit" made by Defendants, (2) if the Court grants that motion, Defendants argue there will be no evidence of Defendants' profits, therefore the Court

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 1

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

should exclude the testimony of all of Plaintiffs' experts, (3) without expert testimony, Defendants then urge the Court to exclude all evidence of damages, (4) if damage evidence is excluded, Defendants then assert there will be no evidence to support Plaintiffs' Washington Consumer Protection Act ("WCPA") claim which should, therefore, be dismissed, and (5) with dismissal of the WCPA claim, Defendants contend that Plaintiffs' sole remaining claim will be for Lanham Act attorneys fees, for which no jury is needed; therefore, a jury should not be impaneled in this case.

The following Statement of Authorities will demonstrate why the Court should disregard this legerdemain, deny all of Defendants' motions in limine and permit the jury to decide the remaining issues of damages in this case.

## STATEMENT OF AUTHORITIES

**A.  Plaintiffs are not Estopped from Introducing Evidence of Defendants' Gross Receipts**

Defendants' first motion amounts to a paragraph statement that Plaintiffs should be "judicially estopped" from offering evidence of their gross receipts or damages by a supposed "earlier inconsistent position" in Plaintiffs' motion for partial summary judgment on the state law counterclaims.

But the doctrine of judicial estoppel does *not* preclude Plaintiffs from introducing evidence of Defendants' gross receipts and profits from infringing activities because: (A) The earlier position taken by Plaintiffs was not that Defendants had made no money, it was that Defendants had *testified* that they made no money and had not otherwise proved lost profits from sales of non-infringing merchandise, and therefore couldn't prove any damages on their state law counterclaims; (B) Judicial Estoppel applies only to prevent a party from asserting a

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 2

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

position that is inconsistent with a prior position that it asserted *to its advantage or gain*. Plaintiffs did not prevail on their motion for partial summary judgment, and therefore the doctrine would not apply even if the statements were truly inconsistent; and (C) This Court has already ruled that the amount and nature of Defendants' profits and expenses is a matter of fact to be determined at trial.

### 1. Defendants have attempted to create an inconsistency where none exists

Plaintiffs' statement, in its motion for partial summary judgment against Defendants' state law counterclaims, was *not* that Defendants had made no profit from infringing activities. It was that Mr. Pitsicalis *testified* that he didn't make any profit, and therefore had not presented any evidence of allowable damages on Defendants' own state law counterclaims. Mr. Pitsicalis' testimony was quoted to support Experience Hendrix's position that Defendants had no evidence of damages on their state law claims. The quoted section of the brief, in context, was:

> Pitsicalis has claimed in its pleadings that the above acts caused Defendants to lose existing and future profits in the form of royalties from licensing contacts. But Pitsicalis has produced no evidence of actual causation or damage.
>
> According to Mr. Pitsicalis' sworn testimony, none of the Defendants in this lawsuit ever made a profit dealing in Jimi Hendrix related items. * * * * Mr. Pitsicalis cannot identify any damage related to lost profit from the canceled or unrealized sale of licenses/merchandise *that did not, or would not have, infringed on Experience Hendrix's trademarks*. Instead, he describes damages to which he would never be entitled." Dkt. 64, at 8-9 (emphasis added).

In context, it is clear that Plaintiffs did not assert that Defendants had never made any money on *infringing* products. Plaintiffs asserted that that Defendants' state law claims should be dismissed because Defendants had produced no evidence of any profit from the sale of *non-infringing* products and, in fact, had taken the position that they had never made any profits.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 3

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

Defendants have based all of five of their motions in limine on the false premise that Plaintiffs have asserted an inconsistent position, when Plaintiffs have not. The position that Plaintiffs took was plainly stated as italicized above, "Mr. Pitsicalis cannot identify any damage related to lost profit from the canceled or unrealized sale of licenses/merchandise *that did not, or would not have, infringed on Experience Hendrix's trademarks*." Dkt. 64, at 9 (emphasis added). That statement is simply not inconsistent with Plaintiffs' present position that Defendants realized gross revenues on the sale of *infringing* merchandise.

### 2.  Defendants misunderstand the Doctrine of Judicial Estoppel

Judicial estoppel is a court created doctrine intended to prevent a party from asserting a position that is inconsistent with a prior position *that it maintained for its advantage or gain*. In other words, if a party doesn't prevail in its assertion of the prior position, the doctrine doesn't apply. In *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808 (2001), the U.S. Supreme Court explained the application of judicial estoppel as first requiring a court ruling or order based on the prior position:

> [W]here a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position,* he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." This rule, known as judicial estoppel, "generally prevents a party *from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.*[1]

---

[1] *New Hampshire*, 532 U.S. at 749 (Internal citations omitted). The Court also quotes Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) for the proposition that "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 4

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

The Court further explained the factors necessary to invoke judicial estoppel, including that the new position must be "clearly inconsistent" with the earlier position and that application of the party's new arguments would create the perception that the Court "had been misled":

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" "Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity*. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[2]

Plaintiffs' position in the Summary Judgment motion is not inconsistent with their present position. It is also clear that Plaintiffs did not "prevail" on their motion to dismiss Defendants' CPA claims, nor did they gain any advantage by the prior statements. The doctrine of judicial estoppel would not apply—even if the positions were truly inconsistent—because Plaintiffs did *not* prevail in the earlier proceeding. *See* Order (February 8, 2011) Dkt. 105, at 43 ("Experience contends that defendants cannot prove on or more of the elements of each of these counterclaims. The Court disagrees and concludes that genuine disputes of material fact exist as to every element of defendants' tort counterclaims."). Accordingly, Experience Hendrix asks that the Court deny Defendants' Motion in limine to exclude Plaintiffs' evidence of damages based on judicial estoppel.

---

[2] *Id*. (internal citations omitted).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 5

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

### 3. Defendants ask that the Court ignore its prior Order that profits and expenses are questions of fact for trial

The Court's ruling on Plaintiffs' motion for partial summary judgment—that a genuine issue of material fact existed as to Defendants' profits and damages—necessarily acknowledges that a genuine issue of fact remains as to Defendants' profits from infringing activities when determining Plaintiffs' damages. Experience Hendrix may therefore prove damages to the jury.

Further, Defendants have previously urged this Court to take the issue of Plaintiffs' damages away from the jury. This Court refused:

> "Pitsicalis contends that Experience is not entitled to damages in connection with the trademark infringement claim, on which the Court has already resolved in part the issue of liability, absent a finding of willfulness. The Lanham Act indicates otherwise. Under 15 U.S.C. § 1117(a), for a violation of § 1125(a), a plaintiff may recover, subject to the principles of equity, the defendant's profits, the plaintiff's actual damages, and the costs of the action. In determining profits, the plaintiff must prove the defendant's sales, but the defendant must establish by a preponderance of the evidence all elements of cost or deduction. The Court may also, in exceptional cases, award reasonable attorney fees to the prevailing party. *The Court is satisfied that whether Pitsicalis's costs equaled or exceeded sales, whether the principles of equity would warrant an award of profits, if any, to Experience, and whether this case is exceptional for purposes of attorney fees, are questions of fact. Thus, defendants' motion for partial summary judgment is DENIED in part with respect to damages and attorney fees relating to plaintiffs' infringement claim.*"[3]

Defendants' second attempt to deprive the jury of an opportunity to determine the amount of Plaintiffs' damages should also be denied.

### B. Evidence will show that Defendants profited from their infringing uses of Plaintiffs' Marks

Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides that a trademark registrant shall be entitled to recover (1) defendant's profits, (2) plaintiffs' lost sales, and (3) the costs of

---

[3] Order (December 28, 2010) Dkt. 102, at 4-5.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 6

the action. Congress extended broad discretion to the Court to fashion a remedy for violations of the Lanham Act.[4] Here, this Court has already found that Defendants have infringed on Plaintiffs' registered trademarks.

The Supreme Court has indicated that an accounting of profits follows as a matter of course after infringement is found by a competitor.[5] Although an accounting of profits must be granted in light of equitable considerations, where trademark infringement is deliberate and "willfully calculated to exploit the advantage of an established mark," as it has been here, the Ninth Circuit has found that a remedy no greater than an injunction "slights" the public.[6]

The present facts indicate that Pitsicalis' infringing activities have been willful attempts to exploit the hard earned value of Plaintiffs' registered HENDRIX, Jimi Hendrix signature marks and headshot logos. It is undisputed that Defendants were aware of Plaintiffs' marks, including the Plaintiffs' signature mark. Defendants knew they were competing directly with Plaintiffs. Defendants did not seek any legal opinions from a trademark attorney before embarking on their infringing activities. Defendants nevertheless prominently displayed similar Jimi Hendrix signature and headshot logos on the products they licensed and in their business names and URL addresses. And when Plaintiffs demanded that Defendants cease their infringing activities, Defendants refused, and continued the use of Plaintiffs' marks, including the Plaintiffs' signature mark.

In computing a defendant's profits for violations of the Lanham Act, "both the language of Section 1117 and the case law indicate that infringing defendants have the burden of proof as

---

[4] *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir. 1968).
[5] *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259 (1916).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 7

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

to any deductions from his gross sales."[7] Allowable deductions include items such as overhead "only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product."[8] However, not all costs are deductible.[9] "Any doubts about the actual amounts of profits will be resolved against the infringer."[10]

When accounting for the infringing defendant's profits, deductions that are <u>not</u> proper include:

- Attorney fees: "Attorneys' fees and associated expenses incurred by an infringer in unsuccessfully defending against a trademark infringement claim are not deductible when calculating an infringer's profits, even though such expenses are directly related to the sale of the infringing goods."[11]

- Reasonable salaries: Where defendant offers no basis upon which reasonable salaries of principals of defendant might be calculated, no deduction shall be taken.[12]

- Realized losses: "The Ninth Circuit, however, has rejected the proposition that such a loss is an allowable deduction when computing a trademark infringer's profits."[13]

- Entertainment and fuel expenses: "doubt as to the amount and deductibility of an infringer's expenses should be resolved against the infringer."[14]

- Taxes: "In the absence of mitigating circumstances, income taxes are not proper

---

[6] *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993) (citing *Playboy Enter., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982).
[7] *Maier Brewing*, 390 F.2d at 124. "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117.
[8] *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984); *see also Winterland Concessions Co. v. Fenton*, 835 F.Supp. 529, 533 (N.D. Cal. 1993).
[9] *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, 2010 WL 2104935 *1, No. CV 03-992 AJW (C.D. Cal. May 24, 2010) (citing *W.E. Basset Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2nd Cir. 1970) and 5 J. Thomas McCarthy, Trademarks and Unfair Competition, § 30.66 (4th ed. 2008).
[10] *Cyclone USA*, supra (quoting *H-D Michigan Inc. v. Biker's Dream, Inc.*, 48 U.S.P.Q.2d 1108, 1113 (C.D. Cal. 1998), *aff'd in part, appeal dismissed in part*, 230 F.3d 1366 (9th Cir. 2000).
[11] *Cyclone USA*, 2010 WL 2104934 at *1.
[12] *Id.* at *2.
[13] *Id.* The *Cyclone USA* court cited to *Wolfe*, noting that "while *Wolfe* has been overruled on other grounds by *Maier Brewing* …, it nevertheless remains controlling Ninth Circuit law on the specific issue of whether an infringing party is entitled to use its losses to offset its profits obtained from trademark infringement." *Id.*
[14] *Id.* at *3.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE (Cause No. C09-0285
TSZ) – 8

deductions."[15]

Here, the jury will consider the evidence of Defendants' sales, claimed expenses, and the testimony from Amrita Sen, Brandon Donofrio, and Defendant Andrew Pitsicalis, and will conclude that Defendants generated profits and that Plaintiffs are entitled to an award of those profits as damages for Defendants' willful infringement.

**C.     Experts Cissel and Yalch are qualified to testify**

Defendants also seek an order prohibiting testimony from experts Richard Yalch and Robert Cissel because "their opinions are based on erroneous conclusions of law counter to the orders that are the law of this case."[16]

**1.     Professor Yalch's Opinions are properly Before the Court**

Defendants contend that Professor Yalch cannot testify because (1) he refers to Defendants' association with Jimi Hendrix song titles as part of his opinions on brand damages; and (2) he bases part of his damage opinions on Defendants' gross receipts which Defendants have moved to exclude.

Professor Yalch will testify about branding in general and the Jimi Hendrix brand in particular.  He will testify about Experience Hendrix's management of the Jimi Hendrix Brand, use of trademarks to enhance the Brand, promotion by EH of the Brand, and the value of the Jimi Hendrix Brand.[17]

Professor Yalch also will testify about how Defendants' infringing activities have damaged the Jimi Hendrix brand.  Specifically, he will address bad publicity, confusion in the

---

[15] *Clamp Mfg. Co. v. Enco Mfg. Co.*, 5 U.S.P.Q.2d 1643 (C.D. Cal. 1987) (citing *Wolfe*).
[16] Defendants' Motion in Limine at 3, Dkt. 112.
[17] Yalch Report, Dkt. 61 Ex A, at 3–4.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE (Cause No. C09-0285
TSZ) – 9

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

marketplace as to origin, and the effect that this confusion has on both consumers and licensees. This confusion damaged the Jimi Hendrix Brand. As Professor Yalch has explained in his November 9, 2009 report:

> "Authenticity is important to consumers and they will pay a premium price for an original item compared to a copy. Experience Hendrix signals to consumers that they are purchasing authentic merchandise by placing a Hendrix headshot and signature on it. Both are highly distinct. A signature is a particularly powerful mark because it is personal and unique. Consumers associate signatures as a sign of authenticity as when an artist signs a painting or a celebrity autographs a souvenir. By placing a guitar with headshot logo and a signature on its products, Hendrixlicensing is usurping Experience Hendrix's distinctive mark and thereby likely to confuse consumers and distributors that their products have been approved by the Hendrix family and its legal entities. Using business names such as hendrixartwork.com and hendrixlicensing.com adds to the likelihood of confusion on the part of distributors as well as consumers."

Professor Yalch will opine that Defendants' use of various images associated with Jimi Hendrix—including a headshot logo and signature similar to Experience Hendrix's marks—has caused confusion and has damaged Experience Hendrix's brand. He will opine that the amount of those damages may be measured by the royalties received by Defendants,[18] the cost of corrective advertising to inform licensees and consumers of Defendants' unauthorized use, and the reduction in the Jimi Hendrix Brand's value.[19]

In summary, Professor Yalch will testify that Defendants' products have created confusion, have damaged Experience Hendrix's brand, and that Experience Hendrix has suffered monetary damages. Apparently, Defendants argue that because Dr. Yalch's report <u>does</u> quantify the dollar amount of Defendants' gross revenue, he should be precluded from testifying about any damages. Dr. Yalch's report specifies the gross revenue that Defendants had generated as of the date of the report and discusses other damages that Plaintiffs have

---

[18] This figure is based on the incomplete sales evidence obtained through discovery directed to Defendants and various licensees. Notably, Defendants have failed to produce sales figures for all licensees.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE (Cause No. C09-0285
TSZ) – 10

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

suffered. Having identified the amount of Defendants' gross revenue Defendants have the burden to prove the deductions to which they are entitled.[20] Defendants' motion to exclude Dr. Yalch's testimony should be denied.

### 2. Mr. Cissel's Opinions are properly before the Court

Defendants challenge Mr. Cissel's testimony because "Mr. Cissel's report does not opine on damages at all, and as the legal issues (but for willfulness/intent as discussed below) are settled, his testimony has no place in a trial on damages." Mr. Cissel's testimony will assist the jury and should be permitted.

First, Mr. Cissel is not being offered to establish damages as Defendants allege.[21] Instead, he is being offered to help the court/jury understand Plaintiffs' trademarks.[22] In fact, Mr. Cissel's report merely outlines what trademark examiners do, how trademarks are registered, the benefits attributable to registration, etc. Second, Plaintiffs intend to have Mr. Cissel testify, as in his report, that the PTO accepted specimens establishing trademark use for the AH/EH marks that are essentially the same as Defendants' prior uses. This testimony will assist the jury in evaluating Defendants' intent to infringe.

### D. Defendants' Remaining Motions in Limine Cannot Stand

Each of Defendants' remaining motions in limine are dependent on the false premise of their first motion—that Plaintiffs should be prohibited from submitting damage evidence to the

---

[19] Yalch Report at 5–6.
[20] As explained above, the question of Defendants' gross receipts are properly before the Court. Excluding any of Dr. Yalch's opinions on this basis is without merit.
[21] Defendants incorrectly state that "Experience has offered two witnesses to assist in the establishment of damages pursuant to Rule 26 (a)(2): Richard Yalch and Robert Cissel." Dkt. 112 at 2.
[22] With the possible exception of one paragraph in Mr. Cissel's report, his report and Professor Yalch's opinions are consistent with the Court's rulings. Because Mr. Cissel will not testify about nominative fair use (because that

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE (Cause No. C09-0285
TSZ) – 11

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

jury. Accordingly, if the Court denies Defendants' first motion in limine, Defendants' subsequent motions should also be denied.

But even if the Court were to exclude Experience Hendrix' damage evidence based on Defendants' judicial estoppel theory (and it should not), Defendants' arguments are incorrect and their motions should be denied. For example, contrary to Defendant's assertion at page 4 of their Motions in Limine, at trial, Plaintiffs will offer into evidence exhibits and testimony about Experience Hendrix's decreased sales between 2007 and 2009. Plaintiffs will also present testimony from Experience Hendrix and from Amrita Sen that those decreased sales were attributable in part to Defendants' infringing activities. And as explained in section B above, damage evidence can take any permissible form. Whether Plaintiffs' suffered damages, and in what amount, will be a proper question for the jury.

Finally, Defendants are mistaken about the damages allowed under the Consumer Protection Act.[23] The jury instruction on CPA damages addresses "injury" and does not require a plaintiff to quantify monetary damages:

> A Plaintiff has suffered an "injury" under the Consumer Protection Act (CPA) if his business or property has been injured to any degree. Under the CPA the Plaintiff has the burden of proving that he has been injured, <u>but no monetary amount need be proven and proof of any injury is sufficient</u>, even if expenses or losses caused by the violation are minimal.

WPI 310.06 (without modification).[24] A jury can conclude, based on the evidence already before this Court, that Defendants' infringing activities have damaged Plaintiffs regardless of testimony about Defendants' profits.[25]

---

issue is not before the Court in this damage trial), those opinions are irrelevant and will not be offered into evidence at trial.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE (Cause No. C09-0285
TSZ) – 12

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

**CONCLUSION**

Experience Hendrix respectfully requests that the Court deny all of Defendants' motions in limine as discussed herein.

Respectfully submitted this 15th day of April, 2011.

>By: s/ John D. Wilson, Jr.
>John D. Wilson, Jr., WSBA No. 4828
>Alfred E. Donohue, WSBA No. 32774
>WILSON SMITH COCHRAN DICKERSON
>1215 4th Ave., Suite 1700
>Seattle, WA 98161
>(206) 623-4100 phone
>(206) 623-9273 fax
>wilson@wscd.com
>
>Karen Wetherell Davis, WSBA No. 21195
>William A. Drew, WSBA No. 38697
>ELLIOT, OSTRANDER, & PRESTON, PC
>707 SW Washington St., Suite 1500
>Portland, OR 97205
>(206) 325-1244 / (503) 224-7112
>(503) 224-7819 facsimile
>karen@eoplaw.com
>
>Attorneys for Plaintiffs

---

[23] Defendants incorrectly argue that "If Pitsicalis's above motions are well taken by the Court, then Experience cannot introduce any competent evidence of damages. Without damages, Experience's CPA claim will necessarily fail." Dkt. 112 at 5.

[24] As courts have explained, "under the CPA, an injury need not be reflected in a monetary loss, but includes such things as loss of good will." *Northwest Airlines, Inc. v. Ticket Exchange, Inc.*, 793 F.Supp. 976, 980 (W.D. Wash. 1992) (citing *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 740, 733 P.2d 208 (1987)).

[25] For example, testimony by Defendants' own licensing agent Amrita Sen establishes Plaintiffs' damages under the CPA. See Dkt. 40 (1/11/10 Donohue Dec Ex B at 120:7–15). Ms. Sen testified, "[i]f you are in fact, infringing on something that Janie [Hendrix] owned that it would hurt her ability to sign new licensees." *See also Id*. at 41:5–17; *Id*. at 110:7–111:2.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 13

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

# CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties below.

Thomas T. Osinski
OSINSKI LAW
535 Dock St., Suite 108
Tacoma, WA 98402
tto@osinskilaw.com

David Martin
Timothy Shea
LEE SMART, COOK, MARTIN & PATTERSON P.S.
701 Pike Street, Suite 1800
Seattle, WA 98101-3927
dlm@leesmart.com
tds@leesmart.com

s/ John D. Wilson, Jr.
John D. Wilson, Jr., WSBA No. 4828
WILSON SMITH COCHRAN DICKERSON
1215 – 4th Ave., Suite 1700
Seattle, WA 98161
(206) 623-4100 telephone
(206) 623-9273 fax
donohue@wscd.com

Attorney for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (Cause No. C09-0285 TSZ) – 14

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273