THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| EXPERIENCE HENDRIX, L.L.C., a Washington Limited Liability Company, and AUTHENTIC HENDRIX, LLC, a Washington Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>HENDRIXLICENSING.COM, LTD, dba HENDRIX ARTWORK and HENDRIXARTWORK.COM, a Nevada Corporation, and ANDREW PITSICALIS,<br><br>Defendants. | No. C09-0285 TSZ<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF EXPERT RICHARD YALCH |

## I.   RESPONSE SUMMARY

In the Court's April 19, 2011 Minute Order, Experience Hendrix L.L.C. and Authentic Hendrix, LLC (hereinafter "Experience Hendrix") were directed to file an offer of proof concerning "what testimony Dr. Yalch is anticipated to provide that is consistent with both his report and the Court's rulings in this case." Experience Hendrix submitted an offer of proof pursuant to the Court's order and consistent with Dr. Yalch's November 9, 2009 report.

Defendants now move this Court to exclude all of his testimony because "Professor Yalch's original report was based on the damages to Experience's Jimi Hendrix Brand" as the

PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 1

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

sole source of Jimi Hendrix related merchandise"[1] and because his supplemental report is untimely and contains new opinions on "the strength and value of Experience's marks."[2]

With the exception of Dr. Yalch's opinions on song titles as a source of unfair competition, nothing from the Court's February 8, 2011 Order alters or affects Dr. Yalch's original opinions that he expressed in his November 2009 report. Nevertheless, Dr. Yalch submitted a supplemental report to clarify his original opinions.

In fact, Defendants have misled the Court as to the content of Dr. Yalch's original report. Defendants have attempted to characterize his report as being based on a belief that Experience Hendrix claims ownership to Jimi Hendrix's personality rights. For example Defendants argue in their motion to exclude that Professor Yalch's original report was based on his belief that "Experience's 'Jimi Hendrix Brand' [is] the **sole source** of Jimi Hendrix related merchandise."[3] That assertion is simply false and misleading. Dr. Yalch does not ever use the phrase "sole source" in his report—in fact he does not even use the word "sole"—nor does he infer that Experience Hendrix is the sole source of Jimi Hendrix related merchandise. Defendants also allege that Dr. Yalch's original report "was predicated on several incorrect bases about Experience's exclusive control of the "Jimi Hendrix Brand." Again, Dr. Yalch does not ever refer to "exclusive control" in his report and does not even use the word control. Instead, Dr. Yalch explains in his report that Defendant's use of Plaintiffs' marks has created confusion as to the source of the Defendant's goods, and that Defendants' infringing use of Experience Hendrix's signature and headshot logo have damaged Experience Hendrix.

Finally, Defendants argue that allowing Dr. Yalch to provide testimony consistent with his supplemental report violates Rule 26 because he did not timely supplement his report.

---

[1] Defendants' Motion to Exclude Professor Yalch at 2.
[2] Motion to Exclude at 4.
[3] This is confirmed by Dr. Yalch in his conclusion, where he explains that "Experience Hendrix and related companies have successfully established Jimi Hendrix as a brand with a long a profitable future. They have created this brand by combining their ownership of Jimi Hendrix's music with trademarks and logos that uniquely and distinctly establish a leading position among celebrity brands."
PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 2

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

Because he does not offer new opinions in his supplemental report and has instead narrowed the scope of his opinions, Defendants cannot show any prejudice to allowing him to testify consistent with Plaintiffs' April 22, 2011 Offer of Proof.

## II.   RESPONSE ARGUMENT

### A.   Dr. Yalch's Original Report Does not Allege that Experience Hendrix is the owner of all things Jimi

Dr. Yalch explains in his report that branding is achieved through the use of trademarks. Dr. Yalch's original report focuses on the Experience Hendrix trademarks as forming the basis for the Jimi Hendrix brand. Defendants wish for "Jimi Hendrix brand" to mean "all things Jimi" or "Jimi Hendrix's personality rights." But Dr. Yalch clearly explains in his ORIGINAL report that the Jimi Hendrix brand is conveyed through Experience Hendrix's use of trademarks to brand music it owns and merchandise it licenses. The "Jimi Hendrix Brand" in Dr. Yalch's original report is a combination of Jimi's music and branded merchandise featuring Experience Hendrix's trademarks:

> Experience Hendrix has successfully transformed Jimi Hendrix from a popular musician to a distinct and well-recognized brand. <u>They have created this brand by combining their ownership of Jimi Hendrix's music with branded merchandise featuring registered trademarks (e.g., Jimi Hendrix, the Jimi Hendrix Experience, the highly recognizable Jimi Hendrix signature, and the Authentic Hendrix head shot logo).</u> Their brand management includes licensing agreements with various entities, the care taken in overseeing how the Hendrix marks are displayed, and efforts to prevent the associations to inappropriate products and settings.

Dr. Yalch's report then discusses the associations that consumers have with the Hendrix brand, and how those associations are positive. There is no discussion or assertion by Dr. Yalch that Experience Hendrix owns all things Jimi, or that Experience Hendrix is the sole source of Jimi Hendrix related merchandise. To the contrary, Dr. Yalch explains that the quality of products is maintained by "Experience Hendrix's close supervision of the products and events associated with the Jimi Hendrix brand."

PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 3

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

Defendants incorrectly argue that Dr. Yalch's report focuses on Experience as having "'exclusive control' and stewardship of Jimi Hendrix." This is simply not in his report.

Perhaps most significant, Dr. Yalch's opinions about "how Hendrixlicensing's activities affect the Jimi Hendrix Brand" focus on Defendants' infringing acts as causing confusion and unfairly benefiting Defendants:

> By featuring a Jimi Hendrix head shot and signature in its brand identification, Hendrixlicensing is unfairly benefiting from the goodwill established by Experience Hendrix. The consequential damages from this behavior are many. They include creating confusion regarding the origin of all Jimi Hendrix branded products, providing unfair competition to authentic merchandise, diluting the Jimi Hendrix brand, tarnishing the Jimi Hendrix brand, and encouraging others to use Jimi Hendrix trademarks without proper authorization.

Again, "Jimi Hendrix branded products" in this excerpt refers to "branded merchandise featuring registered trademarks." Dr. Yalch further opines that by selling infringing products using the Jimi Hendrix signature, Defendants' activities dilute the Jimi Hendrix brand:

> Seeing the highly distinctive Jimi Hendrix headshot and signature indiscriminately displayed on many products undermines the importance of having these marks on an item a consumer has purchased.

Dr. Yalch's damage opinions identify the amount of Defendants' royalties that he had reviewed. He acknowledged that those invoices might not be complete (and in fact, they were not). He did not provide damage numbers for corrective advertising or for damage to the Jimi Hendrix brand and trademarks because of the inherent difficulty in assessing such damages. As explained below, Defendants' new (April 14, 2011) disclosure of claimed business expenses has now allowed Dr. Yalch to opine on the amount of money that Defendants claim to have spent on advertising.

**B.  Dr. Yalch's Supplemental Report Does not Provide New Opinions and is Consistent with His November 3, 2009 Report**

Defendants also seek to exclude Dr. Yalch because Dr. Yalch's supplemental report is untimely. But his supplemental report does not provide new opinions about Defendants'

PLAINTIFFS' OFFER OF PROOF REGARDING THE TESTIMONY OF EXPERT RICHARD YALCH (Cause No. C09-0285 TSZ) – 4

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

infringing activities, nor has he formed new opinions on how Defendants' infringing activities have damaged Plaintiffs.

Rather, he has clarified and narrowed what he will testify to consistent with the Court's February 8, 2011 Order. His supplemental report does not discuss unfair competition through the use of Plaintiff's song titles and does not discuss brand tarnishment. The supplemental report further clarifies that "Jimi Hendrix brand" means the "Experience Hendrix trademarks." Dr. Yalch is not an attorney, but is a marketing expert, having spent years analyzing the uses of trademarks, services marks, logos and other commercial "identities" (aka "brands"). His inclusion of marketing terms in his first report, to identify the trademarks this Court has ruled were infringed, should not disqualify that report or his later clarifications.

Dr. Yalch does not offer new opinions in his supplemental report. He instead clarifies that his original report evaluated Defendants' infringing use of Plaintiffs' marks only and the damage to Experience Hendrix caused by the infringing use.

C. **Dr. Yalch's Testimony is Necessary to Provide Evidence of Experience Hendrix's Damages Resulting from Defendants' Infringing Activities**

Dr. Yalch will provide opinions on damages from Defendants' infringing use of Plaintiffs' marks. He will testify to the amount of royalties and revenues that he has identified from Defendants' limited disclosures. He will also testify to the amount of money that Defendants spent on advertising during the infringing period as a measure of corrective advertising damages. He will also testify to the injury to Experience Hendrix's trademarks and how the value of Experience Hendrix's marks and related goodwill has been diminished by Defendants' unauthorized activities and that Plaintiffs have suffered as a result of Defendants' unauthorized use of their trademarks.

1. **Dr. Yalch will Testify to Defendants' Revenues from Infringing Sales**

Dr. Yalch will provide testimony on Defendants' sales based on his examination of records and licensing data obtained through Defendants and third-parties. He will testify to

PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 5

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

Defendants' gross sales and Experience Hendrix's cost of corrective advertising. This task is complicated by Defendants' poor record keeping and failure to keep records relating to their business.

For example, Mr. Pitsicalis has no receipts for expenses and is relying solely on cancelled checks and bank statement summaries from Acropolis Ventures to show deductible expenses. He has only a few royalty reports. He has no invoices or billing statements from any vendors. And he has kept very few emails between himself and his licensees. He has admitted that does not have a document retention policy and stated: "There isn't any standard. As I run out of storage space I remove files to free up space that at the time of deletion I feel aren't necessary to keep."[4]

Not surprisingly, much of the information relating to Defendants' product sales have come from licensees and bank records subpoenaed by Plaintiffs. Accordingly, Dr. Yalch's testimony on sales is necessary for Experience Hendrix to prove its damages arising from Defendants' unauthorized use of its marks.

2. **Dr. Yalch will Testify to Defendants' Advertising expenditures as a Measure of Corrective Advertising Damages**

On April 12, 2011, Defendants submitted an exhibit to Plaintiffs that purported—for the first time—to identify Hendrixlicensing.com's expenses.[5] Notably, the 850 pages of newly produced bank records are the first attempt by Defendant to produce some evidence of expenses. Because Defendants have never produced any receipts, invoices or bills, Defendants have instead taken the 850 pages of bank records obtained by Experience Hendrix through a subpoena to Bank of America, and added handwritten notations by an unknown person purporting to identify business expenses incurred by Hendrixlicensing.com. These expenses are

---

[4] Answer to Interrogatory No. 5 to Defendants' Response to Plaintiffs' First Interrogatories and Requests for Production, verified July 10, 2009.
[5] *See* Ex. A-3 submitted by Defendants and containing 850 pages of bank rerecords that Experience Hendrix had subpoenaed from Defendants' bank accounts in November 2009.

PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 6

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

not from the hendrixlicensing.com bank account, but from a separate business account issued to Acropolis Ventures.[6] This 850 page exhibit is the entirety of Hendrixlicensing's purported expense-related documentation.

Defendants did not identify who marked up the statements, how the person determined the notations, or whether the notation was based on documents in Defendants' possession. Also for the first time on April 12, 2011, Defendants identified CPA Cedric Nelson as having created summaries of profit and loss statements produced in February 2010.

Professor Yalch has reviewed these newly produced bank statements and their notations in an attempt to identify advertising expenses that Defendants allegedly incurred promoting and selling infringing products and engaging in the infringing website activity. He has prepared a summary of those alleged expenses and is prepared to provide testimony to those alleged advertising expenses at trial. Such testimony would assist the jury in calculating Experience Hendrix's corrective advertising damages.

Courts allow injured parties to seek damages based on the prospective cost of corrective advertising, because compensatory damages for both trademark infringement and breach of contract are intended to make the injured plaintiff whole. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir.1996); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1384 (10th Cir. 1977). In certain circumstances an award equaling the amount necessary for corrective advertizing is recoverable as a remedy where there was harm to the brand. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992) ("'Corrective advertising' is a method of repair. Defendant diminishes the value of plaintiff's trademark, and advertising restores that mark to its original value."); *Big O*, 561 F.2d at 1374-75; *Adray*, 76 F.3d at 988. The award may be prospective, that is a reasonable estimation of the future costs of corrective advertising when the plaintiff has not yet spent any money on advertising to counteract any

---

[6] Acropolis Ventures is a separate Nevada corporation owned by Andrew Pitsicalis.

PLAINTIFFS' OFFER OF PROOF REGARDING THE TESTIMONY OF EXPERT RICHARD YALCH (Cause No. C09-0285 TSZ) – 7

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

confusion in the industry. *Zazú,* 979 F.2d at 506; *Big O,* 561 F.2d at 1375; *Adray,* 76 F.3d at 988-89.

When calculating corrective advertising, Courts can extrapolate potential corrective advertising costs by taking the total advertising amount spent by defendants on the infringing activity, and either grant the entire amount or divide by a percentage to make it "fair." *See, e.g., Big O Tire Dealers,* 408 F. Supp. 1219 (D. Colo. 1976), modified, 561 F. 2d 1365 (10th Cir. 1977). These damages are available even if the plaintiff can afford to conduct the campaign prior to trial. *Adry v. Adry-Mart, Inc.,* 68 F.3d 362 (9th Cir. 1995), amended, 76 F.3d 984, 988 (9th Cir. 1996). See also *Cher v. Forum Int'l, Ltd.,* 2134 USPQ 96 (CD Cal.), aff'd in part, 692 F.2d 634 (9th Cir. 1982). The amount of corrective advertising should not exceed the damage to the value of the mark. The burden of uncertainty of such costs should be borne by the wrongdoer. *Adry,* 76 F.3d at 988. As the 9th Circuit has explained, the amount of Defendant's advertising can be a measure of damages even if the Defendant failed to make a profit from the infringing goods:

> Finally, Jartran contends that the district court should not have included the $6 million cost of its advertising campaign as "profits" within the meaning of Lanham Act § 35 because Jartran did not make a profit during the relevant period. It is irrelevant that Jartran *as a whole* failed to turn a profit during the period of the advertising. The amount to be awarded is the financial benefit Jartran received because of the advertising.

*U-Haul Intern., Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1042 (9th Cir. 1986).

When, as here, Plaintiffs expend significant amounts on marketing for a variety of goods including music, it is easier to measure corrective advertising through Defendants' own expenditures. Professor Yalch did not identify the amount of Defendants' advertising expenses in his November 3, 2009 Report because that information was not available to him. In fact, Defendants provided no information on alleged expenses to Plaintiffs until April 14, 2011,

PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 8

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

when Defendants submitted, for the first time, bank statements[7] arranged with monthly summaries and hand-written notes to identify alleged expenses.

### 3. Dr. Yalch will testify to Experience Hendrix's injury from Defendants' use of its trademarks

Dr. Yalch's opinions on the injury caused by Defendants' unauthorized use of Experience Hendrix's marks are relevant to Experience Hendrix's WCPA claim even if he cannot put a specific dollar value on the damage to Experience Hendrix's trademarks. Defendants have challenged whether Experience Hendrix was injured by their use of Experience Hendrix's marks.[8] Because Dr. Yalch's damage opinions relate to both Experience Hendrix's Lanham Act claims[9] and Experience Hendrix's Washington Consumer Protection Act (WCPA) claims, his testimony as to damages or injury flowing from Defendants' infringing use of Plaintiffs' marks is relevant and will be helpful to the jury.[10] Accordingly, although he will not place a specific amount on damage or injury to the Experience Hendrix trademarks, his testimony is still helpful and necessary for establishing elements of Plaintiffs' WCPA and Lanham Act claims.

## CONCLUSION

Experience Hendrix asks that the Court permit Dr. Yalch to testify consistent with its April 22, 2011 Offer of Proof.

---

[7] Experience Hendrix obtained through subpoenas bank statements for Acropolis Ventures, Hendrix Licensing, and Mr. Pitsicalis' personal accounts in December 2009. These statements did not identify expenses or revenues, as the majority of deposits and withdrawals from each of the accounts were cash.

[8] See, e.g., Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment on Consumer Protection Act Claims at 9 ("Damages are a necessary element of any CPA claim, as well as proof those damages flowed from the Defendants' actions. Here, Experience has failed to meet its burden on damages, and thus failed to show any causal link as well.").

[9] Dr. Yalch's opinions as they relate to the Lanham Act claim concern damages available under the Act, including lost sales and corrective advertising.

[10] Dr. Yalch's opinions as they relate to the WCPA concern lost sales and damage to Experience Hendrix's goodwill and trademarks.

PLAINTIFFS' OFFER OF PROOF REGARDING THE TESTIMONY OF EXPERT RICHARD YALCH (Cause No. C09-0285 TSZ) – 9

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

Respectfully submitted this 2nd day of May, 2011.

By: <u>*s/ John D. Wilson, Jr.*</u>
John D. Wilson, Jr., WSBA No. 4828
Alfred E. Donohue, WSBA No. 32774
WILSON SMITH COCHRAN DICKERSON
1215 4th Ave., Suite 1700
Seattle, WA 98161
(206) 623-4100 phone
(206) 623-9273 fax
wilson@wscd.com

Karen Wetherell Davis, WSBA No. 21195
William A. Drew, WSBA No. 38697
ELLIOTT, OSTRANDER, & PRESTON, PC
707 SW Washington St., Suite 1500
Portland, OR 97205
(206) 325-1244 / (503) 224-7112
(503) 224-7819 facsimile
karen@eoplaw.com

Attorneys for Plaintiffs

PLAINTIFFS' OFFER OF PROOF REGARDING
THE TESTIMONY OF EXPERT RICHARD
YALCH (Cause No. C09-0285 TSZ) – 10

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties below.

Thomas T. Osinski
OSINSKI LAW
535 Dock St., Suite 108
Tacoma, WA 98402
tto@osinskilaw.com

David Martin
Timothy Shea
LEE SMART, COOK, MARTIN & PATTERSON P.S.
701 Pike Street, Suite 1800
Seattle, WA 98101-3927
dlm@leesmart.com
tds@leesmart.com

DATED 2nd day of May, 2011 at Seattle, Washington.

*s/ Jennifer Hickman*
Jennifer Hickman

PLAINTIFFS' OFFER OF PROOF REGARDING THE TESTIMONY OF EXPERT RICHARD YALCH (Cause No. C09-0285 TSZ) – 11

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
1700 FINANCIAL CENTER, 1215 4TH AVENUE
SEATTLE, WASHINGTON 98161-1007
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273